IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOBBY JOE LOPEZ, | § | |
| TDCJ #1337193, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2523 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent.[1] | § | |

## MEMORANDUM AND ORDER

Texas inmate Bobby Joe Lopez (TDCJ #1337193) has filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a state court conviction. The respondent has answered with a motion for summary judgment, arguing that Lopez is not entitled to relief. (Docket No. 17). Lopez has filed a response. (Docket No. 21). After considering all of the pleadings, the state court records, and the applicable law, this Court **grants** the respondent's motion for summary judgment and **dismisses** this case for reasons set forth below.

---

[1] The petition names Nathaniel Quarterman as the respondent. Because Quarterman has retired as Director of the Texas Department of Criminal Justice - Correctional Institutions Division, the Court substitutes his replacement, Rick Thaler, as the proper respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

Lopez is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), who seeks habeas corpus relief in federal court from a state court felony conviction.  According to the state court records, a Harris County grand jury returned an indictment against Lopez in cause number 1025002, accusing him of burglary of a habitation with intent to commit theft.  The State of Texas enhanced that indictment for purposes of punishment with allegations that Lopez had at least one prior felony conviction for burglary of a habitation.  A jury in the 262nd District Court of Harris County, Texas, found Lopez guilty as charged in the indictment.  During the punishment phase of the proceeding, Lopez conceded that the enhancement allegation was true and that he had an extensive criminal record that included at least three other residential burglaries. After hearing all of the evidence, the jury sentenced Lopez to life imprisonment.

On direct appeal, Lopez challenged the factual and legal sufficiency of the evidence in support of his conviction.  The state court of appeals found that the evidence was sufficient based on the following proof presented at trial, which showed that Lopez committed the burglary of a residence along with two co-defendants named Christopher Delossantos and Ruben Hernandez:

> On April 27, 2005, complainant and his wife left their home in Seabrook to run an errand.  When they returned home, a Suburban was blocking their driveway.  The Suburban slowly pulled forward, allowing access to the driveway.  Both complainant and his wife saw only one person, the driver, inside the Suburban.  The driver was talking on a cellular

telephone. While driving up the driveway, complainant noticed that the gate to the backyard was open.  Alarmed because the gate had been closed when he left, complainant told his wife to stay in the car and he got out to check the gate. When he reached the gate, he saw that his backdoor was open. The door had been forced open and the doorjamb was broken.

Suspecting that his house had been burglarized by the person in the Suburban, complainant told his wife to get out of the car and call the police. Complainant backed out of his driveway and followed the Suburban, which was driving away from complainant's house at a high rate of speed. While following the Suburban, complainant got out of his car to flag down a Harris County Constable who was driving a patrol car.  Complainant pointed out the Suburban and told the constable that the people in the Suburban had burglarized his house.  By the time complainant returned to his vehicle, he had lost sight of the constable and the Suburban.  He drove around for a few minutes looking for the Suburban, but then returned home.

Meanwhile, the constable continued chasing the Suburban, until the Suburban pulled over.  The constable arrested the three men that were in the Suburban ― Christopher Delossantos, the driver; Ruben Hernandez, the front-seat passenger; and [Lopez], the back-seat passenger. When the Suburban was searched, police officers recovered a jewelry box and a bag that contained other items belonging to complainant, including the driver's license of complainant's wife. Delossantos's cellular telephone was found in the center console of the Suburban.  [Lopez] also had a cellular telephone in his pocket.

Upon inspection, complainant noticed a number of items missing from the house. These included several pieces of jewelry, a jewelry box, and a computer monitor.  In addition, several drawers and closets were opened with the items inside in disarray, indicating that someone had rummaged through them.  The solid mahogany double-doors of the front of the house were cracked and buckled, because someone had attempted to force them open.

An officer responding to the burglary found no usable fingerprints, but found a footprint on the front door of complainant's house.  He dusted the print so that it would contrast with the color of the front door.  The officer went to the police department to inspect the shoes worn by [Lopez], Hernandez, and Delossantos to see if they matched the shoe print on the door.  Although the shoes worn by Delossantos and [Lopez] had the

3

same tread pattern as the print on the door, Delossantos's shoes were smaller than the print on the door.  [Lopez]'s shoes, however, matched not only the tread pattern on the door, but also matched the size of the shoe print on complainant's door.

The jewelry box and other property that were recovered inside the Suburban were later identified by complainant and his wife as the items that had been taken from their house. Additionally, the call log from the cellular telephones, as well as the billing statements, showed several calls on the morning of and during the time of the burglary between the cellular telephones belonging to Delossantos and [Lopez].

At trial, [Lopez] presented the testimony of Delossantos and Hernandez to show that he was not involved in the burglary.  Delossantos testified that he picked up [Lopez] on the morning of April 27, 2005, to run an errand.  Shortly after picking up [Lopez], Delossantos got a telephone call from his cousin, Hernandez, asking Delossantos to come pick him up. Delossantos drove to a neighborhood that he was unfamiliar with, stopping in front of the house Hernandez represented was his girlfriend's house. [Lopez] got out of the Suburban to get Hernandez.  [Lopez] went up to the front door, knocked, and "came right back to the [Suburban]."  He was gone for "[n]ot even a minute." When he returned, [Lopez] was not carrying anything from the house. Hernandez was carrying a bag when he exited the house. Delossantos acknowledged that he drove Hernandez and [Lopez] from the house, but claimed that he was unaware that complainant or the constable followed him after they left the house.  Delossantos said that, based on what he saw that day, [Lopez] was not involved with the burglary. Although Delossantos testified at trial that neither he nor [Lopez] was involved in the burglary, he pleaded guilty to burglary of complainant's house.

Hernandez testified by taking sole responsibility for the burglary of complainant's house.  Hernandez stated that he did not have a ride, so he called Delossantos to come pick him up.  Hernandez said that he tried to kick in the front door, but it would not open, and he then wiped off the front door to remove his shoe print.  Hernandez forced open the back door to enter complainant's house. When [Lopez] came to the front door, Hernandez told [Lopez] that he was inside with his girlfriend and would be out in about five minutes.  [Lopez] gave Hernandez his cellular telephone so that Hernandez could let [Lopez] and Delossantos know when he was ready to leave. Delossantos kept calling Hernandez because Hernandez told

Delossantos that he was at his girlfriend's house, that he was not supposed to be there, and that his girlfriend's parents might return. When complainant and his wife arrived at the house, Hernandez told Delossantos that it was his girlfriend's parents returning, instructing Delossantos to leave. Hernandez noticed complainant following the Suburban, so he tried to make conversation, joking with Delossantos and [Lopez] to distract them, and to prevent them from noticing that they were being followed. Hernandez testified that he never told Delossantos or [Lopez] that he was burglarizing complainant's house. Hernandez also said that neither [Lopez] nor Delossantos was involved in the burglary. However, Hernandez also testified that as part of a plea-bargain agreement, he stipulated that he had committed the burglary "along with [Lopez] and Christopher Delossantos."

*Lopez v. State*, No. 01-05-01000-CR, 2006 WL 3316784, **1-3 (Tex. App. — Houston [1st Dist.] Nov. 16, 2006).  Based on this evidence, the court of appeals rejected Lopez's appeal and affirmed the conviction in an unpublished opinion.  *See id*.  Thereafter, on April 18, 2007, the Texas Court of Criminal Appeals refused Lopez's petition for discretionary review.

Lopez challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.   In that application, Lopez complained that he was denied effective assistance of counsel at trial.   Lopez also complained that the trial court erred by allowing the State to wait until the day of trial to notify the defense that they would try him as a party.   In addition, Lopez argued that the State failed to prove all the elements of its case beyond a reasonable doubt.   Lopez insisted that there was no evidence proving that he was a party to the burglary and that, but for the constitutional errors that infected his trial, he would not have been found guilty.   Lopez concluded, therefore, that he was actually innocent.   The state habeas

corpus court, which also presided over Lopez's trial, entered findings of fact and concluded that Lopez was not entitled to relief. *See Ex parte Lopez*, No. 70,240-01 at 55-56 (Writ No. 1025002-A). The Texas Court of Criminal Appeals agreed and denied relief, without a written order, based on the trial court's findings. *See id.* (action taken at August 6, 2008).

Lopez now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254. Liberally construed, Lopez raises the following claims that were rejected previously in state court: (1) there was "no evidence" or legally insufficient evidence to support his conviction beyond a reasonable doubt; (2) error on the trial court's part rendered his trial unfair; and (3) he was denied effective assistance of counsel. The respondent has filed a motion for summary judgment, arguing that Lopez fails to show that he is entitled to federal habeas corpus relief. Lopez disagrees. These contentions are addressed below under the applicable federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

The respondent's motion for summary judgment must be determined in compliance with the federal habeas corpus statutes. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA was enacted, at least in part, to ensure comity, finality,

and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted).  As the Supreme Court has explained, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA standard provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle

but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)), *cert. denied*, ─ U.S. ─, 2009 WL 3162010 (Oct. 5, 2009).

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002). Likewise, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

A state court's findings and conclusions are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, ─ U.S. ─, 129 S.

Ct. 1306 (2009).  A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).  The petitioner's *pro se* claims for relief in this case, which are construed liberally as required by *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are discussed below under this deferential standard, beginning with the petitioner's challenge to the sufficiency of the evidence.

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Lopez contends that he is entitled to relief from his conviction because there was factually insufficient ("no evidence") or legally insufficient evidence to support the jury's guilty verdict beyond a reasonable doubt.  As noted above, Lopez's challenge to the sufficiency of the evidence was rejected on direct appeal.  *See Lopez v. State*, No. 01-05-01000-CR, 2006 WL 3316784 (Tex. App. ─ Houston [1st Dist.] Nov. 16, 2006, pet. ref'd).  The state habeas corpus court declined to review these claims further, observing that the court of appeals had already found the evidence to be both factually and legally sufficient.  *See Ex parte Lopez*, No. 70,240-01 at 56.  Lopez's claims are addressed separately below.

### 1.   Factual Sufficiency

Lopez complains that the evidence was factually insufficient to prove that he participated in the burglary.  The respondent correctly notes that any challenge to the factual sufficiency of the evidence is not cognizable on federal habeas corpus review.

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  Under Texas law, evidence is factually insufficient as a matter of law if the proof adduced at trial does not conform to the elements listed in the jury charge.  *See Brown v. Collins*, 937 F.2d 175, 176 (5th Cir. 1991).  This determination is one based on state evidentiary law and, therefore, presents no issue of "constitutional caliber."  *Id.*; *see also Pemberton*, 991 F.2d at 1223 (explaining that state evidentiary law "has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution").  Because Lopez's challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this claim.

### 2.   Legal Sufficiency

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d

1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted).  This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

Lopez was convicted of burglarizing a habitation with intent to commit theft in violation of § 30.02(a) of the Texas Penal Code.  Under this statute, a person commits an offense if, without the effective consent of the owner, the person:

(1)     enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

(2)     remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

11

In this instance, Lopez argues that the State failed to prove his guilt beyond a reasonable doubt under the Texas law of parties.  The court of appeals rejected this argument and found that the evidence was more than sufficient to establish his guilt under this theory:

### Sufficiency of the Evidence

[Lopez] contends that the evidence is legally and factually insufficient to show that [Lopez] committed any act with intent to promote the offense of burglary or that he aided, assisted, or encouraged another individual to commit the burglary.

A.    Burglary and the Law of Parties

A person commits the second degree felony offense of burglary of a habitation if he enters a habitation without the effective consent of the owner with the intent to commit a theft. TEX. PEN. CODE ANN. § 30.02(a)(1), (c)(2). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *Id*. § 7.01(a) (Vernon 2003).  A person is criminally responsible if he acts with intent to promote or assist the commission of the offense and solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id*. § 7.02(a)(2).

When a party is not the "primary actor," the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Miller v. State*, 83 S.W.3d 308, 313 (Tex. App. — Austin 2002, pet. ref'd).  Proof that a person is a party to an offense may be established with circumstantial evidence that shows that the parties were acting together to accomplish their common purpose.  *See Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977); *Miller*, 83 S.W.3d at 314. The agreement to accomplish a common purpose, if any, must be made before or contemporaneous with the criminal event, but in determining whether one has participated in an offense, the court may examine the events occurring before, during, and after the commission of the offense. *Wygal*, 555 S.W.2d at 468-69; *Miller*, 83 S.W.3d at 314.  While mere presence at the scene, or even flight, is not enough to sustain a conviction, such facts may be considered in determining whether an appellant was a

party to the offense.  *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979); *Miller*, 83 S.W.3d at 314.

If the evidence, however, shows the mere presence of an accused at the scene of an offense or his flight from the scene, without more, then it is insufficient to sustain a conviction as a party to the offense.  *Valdez*, 623 S.W.2d at 321; *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App. — Austin 1997, pet. ref'd).

B.    Legal Sufficiency

In a legal sufficiency review, we consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005).  In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

In his third and fifth issues, [Lopez] asserts that the evidence is legally insufficient to support his conviction under the law of parties because "the evidence failed to establish that the [Lopez] committed any act with the intent to promote the alleged burglary offense" and "the evidence failed to establish that the [Lopez] aided, assisted, or encouraged any other individual to commit the alleged burglary offense." Specifically, [Lopez] contends that the evidence is legally insufficient because no witness affirmatively states that [Lopez] was involved in the burglary and both Delossantos and Hernandez testified that [Lopez] was not involved with the burglary.

Viewing the evidence in a light most favorable to the jury's verdict, the evidence shows that Hernandez burglarized complainant's home by entering it and taking complainant's property without consent. The record also shows that a shoe print was found on the front door that matched the size and shape of the shoe worn by [Lopez] when [Lopez] was arrested shortly after the burglary.  The detective investigating the burglary stated that the shoe print was located where one attempting to kick open the front door would kick and that the damage to the door was consistent with

13

someone kicking the door in an attempt to force it open.  [Lopez] was in the Suburban with Hernandez, who acknowledged that he burglarized the house and that he was taken from the house in the Suburban driven by Delossantos.  [Lopez] was seated in the back seat of the Suburban where items stolen from complainant's home were found.

A rational juror could have inferred from this evidence that Hernandez entered complainant's house and stole property while [Lopez] assisted the burglary by attempting to force entry into complainant's home by kicking the front door.  Thus, a rational juror could have found that [Lopez] was guilty under the law of parties. *See Powell v. State*, 194 S.W.3d 503, 507-08 (Tex. Crim. App.2006) (finding evidence legally sufficient to support conviction of burglary under law of parties when appellant was present at scene of burglary, was later found in possession of truck observed at crime scene, and knew man that pleaded guilty to same burglary).

*Lopez v. State*, 2006 WL 3316784, at **3-4.  After concluding that the evidence was legally sufficient to support the conviction, the state court of appeals proceeded to hold that the evidence was also factually sufficient to support Lopez's conviction as a party to the offense of burglary of a habitation.  *See id*. at **5-6.

"Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference."  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citation omitted).  Lopez does not dispute any of the state court's factual findings.  Therefore, these findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 455 U.S. 591, 597 (1982) (holding that findings by a state appellate court are entitled to the same deference owed to findings by trial courts).

The record, which contains ample proof that Lopez was more than merely present at the scene of the offense, supports the state court's findings and the jury's verdict.  In

14

that respect, there was evidence that Lopez kicked the front door of the victim's home in an attempt to force the front door to open.  *See Court Reporter's Record*, vol. 4, at 43-54. In addition, Ruben Hernandez admitted during his guilty plea that he committed the burglary along with Lopez and Christopher Delossantos.  *See id.* at 148-49.  Delossantos also made a statement to police implicating Lopez in the burglary.  *See id.* vol. 5, at 25-28.  Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt.  Lopez fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson v. Virginia* standard or that the state court's decision was otherwise incorrect.  Thus, he is not entitled to federal habeas corpus relief on this claim.

> **B.     Error by the Trial Court**

Lopez complains that the trial court made several erroneous rulings and that the "cumulative effect" of these errors resulted in an unfair trial.   In particular, Lopez complains that the trial court erred by allowing the State to wait until the day of trial to notify defense counsel that it intended to try Lopez as a party to the offense, rather than as a principal actor.  Lopez also complains that the trial court erred by admitting evidence of his prior offenses.

The respondent contends that these claims are without merit because, even if the trial court erred as Lopez asserts, his allegations arise under Texas law only and fail to state a valid claim for relief on federal habeas corpus review.  As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law." *Estelle*

*v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Lopez does not demonstrate that the trial court erred under Texas law.  In that regard, Texas law does not require the State to give notice prior to trial of its intent to rely upon the law of parties as a theory.  *See Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002); *see also* TEX. PENAL CODE § 7.01(c) (providing that "each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice").  Likewise, the record does not show that evidence of Lopez's prior offenses were mentioned during the guilt-innocence phase of the trial.  To the extent that Lopez's prior convictions were admitted into evidence during the punishment phase, this information was admissible under Texas law during this portion of the trial.  *See* TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1) (providing that "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant  . . . and other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act").

Lopez does not show that the trial court violated state law and he further fails to establish that his trial was rendered unfair as a result.  Absent a showing that his trial was fundamentally unfair, Lopez does not demonstrate that the state court's decision to deny

relief was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Lopez is not entitled to a federal writ of habeas corpus on this issue.

### C.        Ineffective Assistance of Counsel

Lopez presents several claims for relief on the grounds that his criminal defense counsel provided ineffective assistance at his trial.  The state habeas corpus court rejected all of Lopez's claims after considering the entire record, which included an affidavit from the attorney who represented him at trial.  *See Ex parte Lopez*, No. 70,240-01 at 55-56. The Texas Court of Criminal Appeals denied relief on the same basis.

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See id*. at 687-88. To demonstrate deficient performance on his counsel's part, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. That is, the defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient to prevail under *Strickland*. Once a petitioner establishes error by his defense counsel, then he must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id*.

In this instance, Lopez complains that his attorney was deficient in the following ways at his trial:  (1) he failed to investigate his case and his criminal history; (2) he failed to present a defense based on "police fabrication"; (3) he failed to prepare a defense

18

to the State's theory of culpability under the law of parties; and (4) he failed to object to the jury instructions.   Lopez contends that his counsel was also deficient during the punishment phase by stipulating to his criminal history and by allowing him to testify on his own behalf.   These allegations are addressed separately below.

### 1.    Failure to Investigate

Lopez contends that his attorney was deficient at trial because he failed to investigate his case.   In that respect, Lopez complains that his trial attorney failed to visit the crime scene, to discover additional witnesses, to investigate his phone records, or to investigate his criminal history.

The Supreme Court has recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 690-91.   To state a claim, however, a habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must demonstrate with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.  *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Lopez does not meet that burden here.

In his affidavit to the state habeas corpus court, Lopez's counsel explained that he interviewed Lopez "numerous times" prior to the trial.  *Ex parte Lopez*, No. 70,240-01 at 47.   After learning that Lopez's co-defendants had entered guilty pleas, counsel had each one bench-warranted from the Texas Department of Criminal Justice to be interviewed.

19

*See id*. at 47-48.  Counsel interviewed both of the co-defendants regarding what role, if any, Lopez played in the charged burglary.  *Id*. at 48.  Counsel added that he was aware of Lopez's prior convictions for burglary.  *Id*.   The record supports counsel's assertion that he conducted a reasonable investigation of the offense and that he presented a defense that took into consideration his client's difficult background.

The state habeas corpus court, which also presided over Lopez's trial, found that the facts related by counsel were "true" and that his affidavit was "credible."  *Id*. at 55. These findings are presumed correct on federal habeas corpus review and they are entitled to deference unless the petitioner rebuts these findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).  Lopez does not attempt to rebut the affidavit provided by his counsel or the state court's credibility findings.  Likewise, Lopez does not allege or show what additional investigation by his counsel would have revealed.   Nor does he demonstrate that additional investigation would have made a difference in his trial.   His conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice.  *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir.1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).  Therefore, Lopez fails to show that the state court unreasonably applied *Strickland* to his claims that counsel was ineffective for failing to investigate.

## 2.    Failure to Present a Defense

Lopez contends that his attorney was deficient at trial because he failed to present a defense based on police fabrication.  At trial, the State presented evidence that a footprint matching Lopez's shoe was recovered from the front door of the burglarized residence.  Lopez appears to claim that the police fabricated this evidence in an effort to show that he participated in the burglary by kicking the front door in an attempt to break in to the victim's home.

On state habeas corpus review, counsel explained that he did not present a defense based on police fabrication because he did not uncover any evidence to support this theory.  *See Ex parte Lopez*, No. 70,240-01 at 50.  Instead, counsel elected to challenge the footprint evidence by questioning the qualifications of the police officer who did the "footprint comparison" by highlighting his "lack of expert skills in that area."  *Id.*  The record, which shows that Lopez's counsel cross-examined the police officer at length regarding his qualifications in the area of footprint comparisons, supports counsel's affidavit.  *See Court Reporter's Record*, vol. 4, at 66-77.

Lopez does not present any evidence that police fabrication was a factor in his case.  His conclusory allegations are insufficient to show that the proposed defense was valid or that his counsel was deficient for failing to present this issue at trial.  Absent a showing that counsel failed to raise a meritorious argument and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that

counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Therefore, Lopez fails to show that the state court unreasonably applied *Strickland* to his claim that counsel was ineffective for failing to present a defense based on police fabrication.

### 3.    Failure to Prepare

Lopez contends that his attorney was deficient at trial because he failed to prepare a defense to the State's theory of culpability under the law of parties.  Lopez argues that, had his counsel prepared adequately, he could have objected to the State's case based on this theory of guilt.

According to his affidavit at the state habeas corpus court, counsel anticipated that the State would attempt to prove Lopez's guilt through the law of parties.  *See Ex parte Lopez*, No. 70,240-01 at 50.  The record confirms that counsel prepared accordingly and presented a defense to the State's theory.  In that respect, Lopez's co-defendants (Christopher Delossantos and Ruben Hernandez) testified for the defense that Lopez had no role in the burglary.  *See Court Reporter's Record*, vol. 4, at 115, 135-36.  Defense

counsel's closing argument emphasized a lack of evidence showing that Lopez was a party to the offense.  *See id.*, vol. 5, at 42-53.  The jury, however, was not persuaded.

Lopez has not refuted defense counsel's affidavit and he has not shown that counsel failed to anticipate or prepare for trial based on a theory of liability under the law of parties.  Nor does he show that his counsel had a valid objection to make after the State elected to pursue this theory at trial.  In Texas, the State is not required to give advance notice that it intends to pursue this theory and "it is well-settled that the law of parties need not be pled in the indictment."  *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) (citations omitted); *see also* TEX. PENAL CODE § 7.01(c).  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.  *See Parr*, 472 F.3d at 256.  Therefore, Lopez fails to show that the state court unreasonably applied *Strickland* to his claim that counsel was ineffective for failing to prepare a defense or raise an objection to the State's theory of liability under the law of parties.

### 4.    Failure to Object to the Jury Instructions

Lopez also complains that his attorney was deficient at trial because he failed to object to the jury instructions on the grounds that there was "no evidence" to support a finding of guilt under the law of parties.  In his affidavit to the state habeas corpus court, counsel noted that the State presented evidence that Lopez participated in burglarizing the victim's home and that, in his view, this evidence was sufficient to support an instruction

on the law of parties as a theory of liability.  *Ex parte Lopez*, No. 70,240-01 at 50.

Counsel explained that he did not object to the instruction because he believed it was

necessary "to educate the jury on what the law of parties actually meant."  *Id.*  Counsel

observed that Lopez was arrested shortly after the burglary occurred in a vehicle that

contained the victim's stolen property.  *Id.*  Counsel elected to pursue a defense which

attempted to show that Lopez was merely present in the vehicle but did not participate in

the actual burglary. *See id.* at 50-51. Counsel worried that, without an instruction on the

law of parties, "the jury may have been confused with the mere notion that Mr. Lopez

happened to be in a vehicle with stolen property, thus he should be found guilty based

upon that fact alone even though he had no knowledge that a crime had been committed

and did nothing to participate in the crime whatsoever."  *Id.*

Counsel's decision to allow the instruction without an objection was based on trial

strategy.  Strategic decisions made by counsel during the course of trial are entitled to

substantial deference in the hindsight of federal habeas review.  *See Strickland*, 466 U.S.

at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly

deferential" and that "every effort [must] be made to eliminate the distorting effects of

hindsight");  *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)

("'Informed strategic decisions of counsel are given a heavy measure of deference and

should not be second guessed.'") (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.

1999)); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite

variety of possible trial techniques and tactics available to counsel, this Circuit is careful

not to second guess legitimate strategic choices.").  As the Fifth Circuit has emphasized, a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 5008) (citing *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (quotation omitted).

Lopez does not show that counsel's strategy was invalid in this instance. In that respect, the record reflects that his decision not to object to the instruction was consistent with the defense that he presented, which attempted to show that Lopez was merely present as a passenger in the vehicle that contained the victim's stolen property, but that he was not an actual participant in the burglary.  Lopez does not show that his counsel's decision was so ill chosen that it rendered his trial unfair and he has not overcome the presumption that counsel's strategy was sound.  Therefore, Lopez fails to show that the state court unreasonably applied *Strickland* to his claim that counsel was ineffective for failing to object to the jury instruction on the law of parties.

### 5.    Errors at Punishment

Lopez contends that his counsel was also deficient during the punishment phase of the trial, which featured evidence showing that Lopez had a lengthy criminal record. Lopez acknowledged that the enhancement paragraph in the indictment, which alleged a prior felony conviction for burglary of a habitation in December of 2004, was true.  *See Court Reporter's Record*, vol. 6, at 7.  Lopez also stipulated that he had numerous prior convictions, including convictions for the following offenses:  (1) theft in December of

2004; (2) burglary of a habitation in August of 2004; (3) burglary of a habitation in February of 2004; (4) unlawfully carrying a weapon in January of 2003; (5) assault involving injury to a child in January of 2002; (6) driving with an invalid license in August of 2001; criminal mischief in March 2000; and (7) driving with a suspended license in February of 2000. *See id.* at 25-27.

Lopez's mother testified that her son had started his own business (detailing cars) and that he would work to support his family if given the opportunity. *See Court Reporter's Record*, vol. 7, at 44-48. In addition, Lopez testified on his own behalf. *See id.* at 48-52. He admitted that he was "doing wrong," that he hurt others in the process, and that he regretted his actions. *See id.* at 50-51. Although Lopez maintained that he did not participate in the charged offense, Lopez explained that he had pleaded guilty to the charges lodged against him previously and that he cooperated with the police because he wanted to do his time and then try to start over. *See id.* at 49-50. The prosecutor questioned his sincerity, however, noting that he refused to take responsibility for the burglary at issue and that he had committed three other residential burglaries. *See id.* at 53-58. After hearing all of the evidence, the jury gave Lopez a life sentence. *See id.* at 75.

Lopez complains that his attorney should not have stipulated to his prior felony convictions and that his attorney further erred by allowing Lopez to testify. Lopez also complains that his attorney should have, but did not, present other witnesses on his behalf during the punishment phase.

At the state habeas level, Lopez's attorney explained that he counseled Lopez to plead true to the enhancement allegation in the indictment and stipulate to his criminal record in an effort to show the jury that he took responsibility for his past. *Ex parte Lopez*, No. 70,240-01 at 48, 51. Counsel was aware of Lopez's criminal record and that this information would be admissible during the punishment phase of the trial. *See id*. at 48. He was also aware that the State would attempt to use evidence of extraneous crimes and bad acts during the punishment phase of the trial as well and he defended against that evidence in an effort to hold the State to its burden. *See id*. Counsel explained that he advised Lopez that it was his option to testify on his own behalf. *See id*. at 51. Counsel believed that it was in Lopez's best interest to testify at the punishment phase to express "remorse and contrition before the jury at that time." *Id*. In so doing, Lopez would have the opportunity to "explain his background, his desire to start a business, and his desire to work towards staying out of trouble and becoming a productive member of society if the jury would return with a lighter sentence." *Id*. Lopez agreed to testify and he took the stand in an effort to convince the jury that he deserved leniency. *Id*.

Counsel's decision to stipulate to Lopez's prior convictions was a strategic decision to show the jury that Lopez accepted responsibility for his behavior. Counsel's strategic decision is entitled to substantial deference and is not subject to judicial second guessing. *See Strickland*, 466 U.S. at 689. As the respondent correctly notes, the evidence regarding Lopez's prior offenses would have been admissible even without the stipulation. *See* TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1). Likewise, a criminal

27

defendant has the right to testify and the choice to do so belongs to him personally, and not to his counsel.  *See Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citation omitted).  Lopez does not dispute that he voluntarily agreed to testify.  The record reflects that the prosecutor's cross-examination of Lopez was brief, considering Lopez's lengthy record of criminal conduct.  *See Court Reporter's Record*, vol. 7, at 53-58.  Lopez does not allege facts showing what else his counsel could have done on his behalf in an effort to mitigate his punishment.[2]  Based on this record, Lopez fails to show that counsel's strategic decision was so unwise as to render the trial unfair.  *Geiger*, 540 F.3d at 309.

Alternatively, even if counsel's chosen strategy could be considered deficient, Lopez fails to demonstrate actual prejudice in this case.  As outlined above, to demonstrate actual prejudice for the purpose of an ineffective-assistance claim, a prisoner must show that there is "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In the state sentencing context, the relevant inquiry under the prejudice prong of the *Strickland* test is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been "'significantly less harsh,' *Spriggs v. Collins*,

---

[2]     Lopez appears to add that his counsel was deficient for failing to call additional witnesses on his behalf at the punishment phase of the trial.  Lopez does not identify any of those witnesses or show that they would have testified if they had been called; nor does he disclose the substance of their testimony.  Lopez's conclusory allegation is insufficient to state a claim under *Strickland*.  *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (observing that, to demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial").  Therefore, the Court does not address this allegation further.

993 F.2d 85, 88-89 (5th Cir. 1993), taking into account 'such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.'" *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (citation and quotation omitted), *cert. denied*, ─ U.S. ─, 2009 WL 3162010 (Oct. 5, 2009).

In this case, the State charged Lopez with burglary of a habitation with intent to commit theft, which is a second degree felony violation of § 30.02(a) of the Texas Penal Code.  According to the evidence at trial, Lopez and two other men kicked in the front door of a residence to enter the home.  Because the indictment was enhanced with allegations that Lopez had at least one prior felony conviction, he was eligible for punishment as a first-degree felon, meaning that he faced a potential sentence of life in prison or any term of not more than 99 years or less than 5 years.

The State presented evidence that, in addition to the charged burglary, Lopez was convicted of three more residential burglaries along with several other assorted offenses. The State presented additional evidence during the punishment phase of the trial that Lopez participated in a string of other "kick burglaries" in which the front door of several local residences had been kicked in by force.  Items taken during these residential burglaries included jewelry, electronics, and other personal effects, including a child's piggy bank.  The perpetrators also stole firearms from the homes.  Other than the testimony from Lopez's mother, there was little else presented in the way of mitigation

and Lopez has not provided any additional information showing that he was deserving of leniency.

Although Lopez received the maximum sentence, he has not shown that his punishment was increased as the result of deficient performance by his counsel.  In other words, he has not shown that, but for his counsel's performance, there was a reasonable probability that his sentence would have been significantly less harsh.  Therefore, Lopez has failed to show that the state court's decision to reject his claim was an unreasonable application of clearly established federal law as determined by the Supreme Court.  It follows that he is not entitled to relief on this issue.  Because none of Lopez's claims merit habeas corpus relief, the respondent is entitled to summary judgment in this case.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

31

1.    The respondent's motion for summary judgment (Docket No. 17) is **GRANTED**.

2.    The petition for a writ of habeas corpus (Docket No. 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

3.    A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 12th day of November, 2009.

_____
Kenneth M. Hoyt
United States District Judge

32